**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | |
|---|---|
| DANNY C. HOLLAND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 1:15-cv-00064-SLC |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Danny Holland appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application under the Social Security Act (the "Act") for disability insurance benefits and disabled widower's benefits (together, "DIB").[1] (DE 1). For the following reasons, the Commissioner's decision will be REVERSED, and the case will be REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order.

### I. PROCEDURAL HISTORY

Holland applied for DIB in March 2012, alleging disability as of September 20, 2008, which he later amended to July 20, 2011.[2] (DE 10 Administrative Record ("AR") 25, 228-31, 259-62, 271). The Commissioner denied Holland's application initially and upon reconsideration. (AR 137, 164). After a timely request, a hearing was held on March 7, 2013,

---

[1] All parties have consented to the Magistrate Judge. (DE 13); *see* 28 U.S.C. § 636(c).

[2] This is Holland's second application for disability benefits. (AR 95). His first application, which alleged an onset date of July 1, 2005, was denied on July 19, 2011. (AR 111-14). Holland did not seek judicial review of that decision.

before Administrative Law Judge William D. Pierson ("the ALJ"), at which Holland, who was represented by counsel, and a vocational expert, Amy Kutschbach (the "VE"), testified. (AR 54-91). On April 15, 2013, the ALJ rendered an unfavorable decision to Holland, concluding that he was not disabled because despite the limitations caused by his impairments, he could perform a significant number of unskilled, light jobs in the economy. (AR 22-36). The Appeals Council granted Holland's request for review and issued Holland a partially favorable decision by finding that he was disabled as of April 15, 2013, but not before that date. (AR 1-18, 358).

Holland filed a complaint with this Court on March 10, 2015, seeking relief from the Commissioner's decision with respect to the finding that he was not disabled before April 15, 2013. (DE 1). In doing so, Holland advances just one argument—that the ALJ failed to adequately account for his moderate limitations in concentration, persistence, or pace when determining his residual functional capacity ("RFC") and when posing the hypotheticals to the VE at step five. (DE 18 at 10-12).

## II. FACTUAL BACKGROUND[3]

At the time of the ALJ's decision, Holland was 54 years old (AR 266); had a fifth or sixth grade education with no special education classes (AR 7, 61, 272); and possessed past work experience as a machine operator and handyman (AR 321, 324). He alleges disability due to subtle chondromalacia and subtle fissuring of the femoral articular surface and mild narrowing of the medial compartment of the right knee, degenerative disc disease, hypertension, spondylosis of the cervical spine, chronic kidney disease, gastroesophageal reflux disease, panic attacks,

---

[3] In the interest of brevity, this Opinion recounts only the portions of the 733-page administrative record necessary to the decision.

major depressive disorder, agoraphobia, explosive disorder, personality disorder, and borderline intellectual functioning. (DE 18 at 2). Holland does not challenge the ALJ's consideration of his physical impairments, and thus, the Court will focus on the evidence pertaining to his mental impairments. (DE 18 at 3-8).

## A. *Holland's Testimony at the Hearing*

At the hearing, Holland testified that he is a widower and lives alone in a house. (AR 59-60, 70). He had obtained Medicaid benefits two years earlier and was on Medicaid at the time. (AR 60). A friend had driven him to the hearing; Holland drives infrequently because he has difficulty maintaining his right foot on the gas pedal. (AR 60-61). He stated that he had not worked since injuring his shoulder in a fall three or four years earlier. (AR 61). Holland stated that he cannot read or write other than to sign his name, but he can recognize some small, familiar words, including the names of his medications. (AR 63-64). On a typical day, Holland gets up at about 10:30 a.m., takes his medication, and then lies back down. (AR 75-76). He spends most of his day sitting or lying down. (AR 76). Holland prepares light meals in the microwave, but his daughter does his housework and most of his shopping and errands. (AR 76-77).

Holland testified that he cannot focus, that he has an explosive temper, and that he cannot be around people. (AR 68). He stated that he isolates himself due to his temper, reporting that he had assaulted three people in the past, including while he was at work. (AR 68, 71). He had not consumed alcohol in the past six months, but previously had been drinking eight beers a day. (AR 69). Since stopping his use of alcohol, Holland has felt much better and his temper is now mostly under control. (AR 68-71). The last time Holland had assaulted anyone was two-and-a-

3

half years prior to the hearing. (AR 72). He reported that his temper is triggered, at least in part, by his constant shoulder pain. (AR 72). He indicated that his medications help to control his temper and his pain, which he rated on a scale of one to 10 as "a six or a seven" with medication. (AR 72-73).

## B. *Summary of the Relevant Medical Evidence*

In September 2009, Henry Martin, Ph.D., performed a psychological evaluation and intellectual assessment of Holland at the request of Social Security. (AR 383-87). Holland told Dr. Martin that he had worked for Foster Forbes Glass Company for 22 years. (AR 384). He stated that he spends most of his time at home watching television or sitting outside; a few times each week, he drives to visit his brother or run an errand. (AR 384). He depends on his daughter to help pay his bills, run most errands, and grocery shop. (AR 384). His mood and affect were anxious and depressed. (AR 384). Results of the Wechsler Adult Intelligence Scale, Fourth Edition, revealed a full scale IQ of 70, a verbal comprehension index of 70, a perceptual reasoning index of 90, a working memory index of 69, and a processing speed index of 65. (AR 384-85). Dr. Martin's diagnostic impression was borderline intellectual functioning and a learning disability: verbal language deficits. (AR 385). He found that Holland was capable of managing his own funds. (AR 386).

In June 2010, Holland was evaluated at the Grant Blackford Mental Health agency, stating that he was seeking medications and disability benefits for his depression and other mental health issues. (AR 388-93). A mental status exam revealed a cooperative attitude, depressed mood, tearful affect, paranoid thought content, circumstantial thought process, normal cognition, below average intelligence, poor insight, agitated psychomotor, no suicidal thoughts,

and no present violent or homicidal thoughts. (AR 391). Holland reported difficulty concentrating on tasks, poor memory recall, intermittent irritability, some difficulty making decisions, paranoid thoughts, obsession with cleanliness, poor writing skills, limited reading skills, and poor sleep. (AR 392). He was taking Zoloft, which was somewhat helpful. (AR 392). He reported difficulty going out in public, that he feels overwhelmed, that he has panic attacks almost daily, and that he tends to isolate himself. (AR 391-92). During the evaluation, Holland had difficulty focusing, became confused at times, and required redirection. (AR 392). He was assigned a Global Assessment of Functioning ("GAF") score of 50 and diagnosed with adjustment disorder with mixed anxiety and depression mood, and post traumatic stress disorder.[4] (AR 391-92).

In July 2010, Holland returned to Grant Blackford Mental Health. (AR 395). He reported having eight to 10 panic attacks a day, each lasting up to 15 minutes. (AR 395). Holland stated that he was claustrophobic and that he had bad anxiety and a "real bad temper." (AR 395). He claimed to have suicidal thoughts as recently as the previous day; however, he did not appear distressed. (AR 395). The examiner noted that Holland used passive language,

---

[4] GAF scores reflect a clinician's judgment about the individual's overall level of functioning. Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 32 (4th ed., Text Rev. 2000). A GAF score of 31 to 40 reflects some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. *Id*. A GAF score of 41 to 50 reflects serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *Id*. A GAF score of 51 to 60 reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *Id*. A GAF score of 61 to 70 reflects some mild symptoms or some difficulty in social, occupational, or school functioning, but "generally functioning pretty well." *Id*.
  "The American Psychiatric Association no longer uses the GAF as a metric." *Spencer v. Colvin*, No. 13-cv-1487, 2015 WL 684545, at *17 n.5 (C.D. Ill. Feb. 17, 2015) (citing Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 16 (5th ed. 2013)). However, the medical sources of record used GAF scores in assessing Holland, so they are relevant to the ALJ's decision. *See id*. (citing *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013)).

which indicated to the examiner that Holland was poor at taking responsibility for his emotions and actions. (AR 398-99). Holland's Zoloft was discontinued, and he was started on Lexapro. (AR 399). Holland was diagnosed with panic disorder with agoraphobia, depressive disorder, and personality disorder not otherwise specified. (AR 399).

On April 26, 2011, Sajjad Habib, M.D., examined Holland upon referral from Bridges to Health for his hypertension. (AR 630-33). Dr. Habib performed a mental status exam as part of the new patient exam and found that Holland's mental status, attention span, and ability to concentrate were all normal. (AR 632).

In May 2012, Dr. Martin saw Holland for another mental status examination at the request of Social Security. (AR 582-86). Holland was very disorganized in his presentation of material; he rambled and was circumstantial during the interview. (AR 584). His recall of a sequence of events was poor; he had limited insight into the nature of his problems. (AR 584). He was unable to recall any objects on a five-minute delayed recall; he was able to do simple addition, but not division, multiplication, or subtraction. (AR 585). His general emotional demeanor was unstable; several times he made vague threats that he "wasn't afraid of whipping someone who made him mad." (AR 584). Dr. Martin noted that Holland took some pride in stating that he had choked several coworkers when he was still working; Holland also stated that he had "whipped" a neighbor a year ago and had recently "thought about whipping" a cardiologist who had asked if he was lazy. (AR 584). Holland admitted that he had physically attacked his daughter's boyfriend, after which his daughter stopped helping Holland. (AR 584). Holland told Dr. Martin: "If I lose my temper I will whip you." (AR 584).

Holland further reported that he was having frequent panic attacks, but that he is better

6

when taking his Xanax.  (AR 586).  Dr. Martin's diagnostic impression on Axis I was major depression, agoraphobia with panic attacks, and intermittent explosive disorder; on Axis II, personality disorder and borderline intellectual functioning; on Axis IV, severe psychosocial stressors: chronic pain and limited social support system; and on Axis V, a current GAF score of 40.  (AR 586).  Dr. Martin concluded by stating that during the appointment Holland was disorganized and circumstantial in his presentation of material and his emotional and behavioral status was very unstable and, at times, threatening.  (AR 586).  Dr. Martin opined that Holland would need a payee to manage his funds.  (AR 586).

In May 2012, Maura Clark, Ph.D., a state agency psychologist, reviewed Holland's record and completed psychiatric review technique and mental RFC forms.  (AR 588-605).  On the psychiatric review technique, Dr. Clark found that Holland had moderate restrictions in activities of daily living; in maintaining social functioning; and in maintaining concentration, persistence, or pace; but he had no episodes of decompensation of extended duration.  (AR 598). On the mental RFC form, Dr. Clark indicated that Holland was moderately limited in understanding, remembering, and carrying out detailed instructions; maintaining attention and concentration for extended periods; interacting appropriately with the general public; accepting instructions and responding appropriately to criticism from supervisors; and getting along with coworkers or peers without distracting them or exhibiting behavioral extremes.  (AR 602-03). Holland was not significantly limited in the remaining 14 categories.  (AR 602-03).

In her narrative summary, Dr. Clark summarized the mental health evaluations and evidence of record, concluding that Holland's presentation to Dr. Martin at the May 2012 exam was inconsistent with the totality of the evidence of record.  (AR 604).  She noted that Holland

7

was not currently receiving any psychiatric treatment or psychotherapy services. (AR 604). She opined that his attention and concentration were moderately impacted. (AR 604). Dr. Clark further concluded that Holland could manage occasional contact with the public, but that sustained, intensive, interpersonal contact would be precluded; she stated that he would work best alone, in semi-isolation from others or as part of a small group. (AR 604). She found that Holland was able to maintain at least a minimal level of relationship with others, and that he could work with a supervisor who was normally considerate and positive, but would have problems with a supervisor who was often negative, critical, or quarrelsome. (AR 604). Dr. Clark concluded that the totality of evidence of record suggested that Holland could understand, carry out, and remember simple instructions; make judgments commensurate with the functions of unskilled work; respond appropriately to brief supervision and interactions with coworkers and work situations; and deal with changes in a routine work setting. (AR 605). Dr. Clark's opinion was subsequently reviewed and affirmed by Joelle Larsen, Ph.D., a second state agency psychologist. (AR 684).

In February 2013, Dale Economan, M.D., completed a medical assessment of ability to do work related activities (physical) form. (AR 732-33). He indicated that Holland was unable to maintain the emotional and mental stability and concentration to work 40 hours per week. (AR 732).

### III. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The

Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

## IV. ANALYSIS

### A. *The Law*

Under the Act, a claimant is entitled to DIB if he establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App'x 1; (4) whether the claimant is unable to perform his past work; and (5) whether the claimant is incapable of performing work in the national economy.[5] *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted); 20 C.F.R. § 404.1520. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (citation omitted). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* (citation omitted). The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868 (citation omitted).

## B. The Commissioner's Final Decision

On January 8, 2015, the Appeals Council adopted in part the findings and conclusions articulated by the ALJ on April 15, 2013; therefore, the ALJ's decision, as modified by the Appeals Council, became the Commissioner's final decision. (AR 1-11, 22-36). The ALJ concluded at step one of the five-step analysis that Holland had not engaged in substantial gainful activity since July 20, 2011, his amended alleged onset date. (AR 6, 25). At step two, the ALJ found that Holland had the following severe impairments: subtle chondromalacia and

---

[5] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite his limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 404.1520(e).

10

subtle fissuring of the femoral articular surface and mild narrowing of the medial compartment of the right knee, mild to moderate degenerative disc disease of the thoracic spine, hypertension, mild spondylosis of the cervical spine, mild degenerative disc disease of the lumbar spine, mild and stable chronic kidney disease, mild gastroesophageal reflux disease, panic attacks, major depressive disorder, agoraphobia, explosive disorder, personality disorder, borderline intellectual functioning, and degenerative joint disease. (AR 6, 25).

At step three, the ALJ concluded that Holland did not have an impairment or combination of impairments severe enough to meet or equal a listing. (AR 25-27). Before proceeding to step four, the ALJ determined that Holland's symptom testimony was not entirely credible and assigned him the following RFC:

> [T]he claimant has the [RFC] to perform light work . . . except [he] can sit, stand or walk six hours in an eight-hour workday; lift, carry, push or pull 10 pounds frequently, 20 pounds occasionally; occasional[ly] kneel, crouch, or crawl; no ropes, ladders or scaffolds; occasionally use the stairs and ramps; frequent bending and stooping in addition to what is required to sit; and the claimant would require a cane for the purpose of prolonged walking and uneven surfaces. The claimant is limited to superficial interaction with coworkers, supervisors and the public, superficial is defined as occasional and casual; no prolonged conversation; contact with supervisors still involves necessary instructions; is also limited to simple, routine, repetitive tasks, in other words the claimant can remember simple work like procedures, can maintain sufficient concentration to attend to simple tasks with normal work breaks; is limited to a low stress job with occasional decision making, occasional changes in the work setting and can tolerate predictable changes in the work environment.

(AR 6, 27-28). The ALJ found at step four that Holland had no past relevant work. (AR 6, 34). At step five, based on the assigned RFC and the VE's testimony, the ALJ concluded that Holland could perform a significant number of unskilled, light jobs in the economy, including repack room worker, laundry worker, and mail sorter; thus, he was not disabled. (AR 35-36).

11

The Appeals Council, however, observed that Holland had reached the age of 55 approximately four months after the ALJ issued his decision. (AR 7). As such, the Appeals Council chose to apply the borderline age provision, 20 C.F.R. § 404.1563(b), and considered Holland to be of advanced age as of the date of the ALJ's decision. (AR 8). The Appeals Council found that an individual of advanced age with Holland's medical and vocational factors would be disabled pursuant to Medical-Vocational Rule 202.01. (AR 8). Therefore the Appeals Council modified the ALJ's decision and concluded that Holland was disabled since April 13, 2013, but not before that date. (AR 8).

*C. The ALJ Failed to Adequately Account for Holland's Moderate Deficits in Concentration, Persistence, or Pace in the RFC and in the Hypotheticals to the VE*

Holland's sole argument on appeal is that the ALJ failed to adequately account for his moderate deficiencies in maintaining concentration, persistence, or pace when assigning the mental RFC and when posing the hypotheticals to the VE at step five. Holland's argument ultimately has merit, necessitating a remand of the Commissioner's final decision.

As explained earlier, "RFC is what an individual can still do despite his or her limitations." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996); *see also* 20 C.F.R. § 404.1545(a)(1). The "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." SSR 96-8p, 1996 WL 374184, at *1. "The RFC assessment must be based on *all* of the relevant evidence in the case record . . . ." SSR 96-8p, 1996 WL 374184, at *5; *see* 20 C.F.R. § 404.1545(a)(3). Cases from the Seventh Circuit Court of Appeals "generally have required the ALJ to orient the VE to the totality of a claimant's limitations." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010) (citations omitted). "[The] cases, taken

together, suggest that the most effective way to ensure that the VE is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical." *Id.*

More specifically, in *O'Connor-Spinner*, the Seventh Circuit concluded that the ALJ erred where he found that the claimant had moderate difficulties in concentration, persistence, or pace, but failed to specifically observe this limitation when posing hypotheticals to the VE at step five. *Id.* at 620-21. In doing so, the court acknowledged that it has not insisted "on a per se requirement that this specific terminology ('concentration, persistence and pace') be used in the hypothetical in all cases." *Id.* at 619. The court explained:

> We also have let stand an ALJ's hypothetical omitting the terms 'concentration, persistence and pace' when it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform. We most often have done so when a claimant's limitations were stress- or panic-related and the hypothetical restricted the claimant to low-stress work.

*Id.* at 619 (citing *Arnold v. Barnhart*, 473 F.3d 816, 820 (7th Cir. 2007) (upholding a hypothetical restricting the claimant to work involving low production standards and a low-stress environment, where the claimant's difficulties with concentration, persistence, or pace arose from stress-induced headaches, frustration, and anger); *Johansen v. Barnhart*, 314 F.3d 283, 288-89 (7th Cir. 2002) (allowing a hypothetical formulated in terms of "repetitive, low-stress" work to stand, where the claimant's deficits in concentration, persistence, or pace stemmed from a panic disorder); *Sims v. Barnhart*, 309 F.3d 424, 427, 431-32 (7th Cir. 2002) (finding that the ALJ's restricting the claimant from jobs "involving complex work processes or unusual levels of stress" adequately accommodated the claimant's concentration problems arising, in part, from a panic disorder)).

13

"In most cases, however, employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace." *Id.* at 620 (finding that a restriction to repetitive tasks with simple instructions did not necessarily account for the claimant's depression-related problems in concentration, persistence, and pace) (collecting cases); *see also Warren v. Colvin*, 565 F. App'x 540, 544 (7th Cir. 2014) (finding that a limitation to "simple, repetitive tasks" did not adequately account for the claimant's concentration problems arising from depression and borderline intellectual functioning); *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014) (concluding that a limitation to unskilled work did not sufficiently account for the claimant's concentration problems stemming from depression and a psychotic disorder). "The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner*, 627 F.3d at 620 (citing *Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009); *Craft v. Astrue*, 539 F.3d 668, 677 (7th Cir. 2008); *Kasarsky v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2003); SSR 85-15, 1985 WL 56857, at *6 (Jan. 1, 1985)).

"Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's [mental] condition may make performance of an unskilled job as difficult as an objectively more demanding job." SSR 85-15, 1985 WL 56857, at *6 ("The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day. . . . Thus, the mentally impaired may have difficulty meeting the requirements of even so-

called 'low-stress' jobs."). Accordingly, the RFC and hypotheticals "must account for *both* the complexity of the tasks and the claimant's ability to stick with a task over a sustained period." *Warren*, 565 F. App'x at 544 (emphasis added) (citations omitted); *see Yurt*, 758 F.3d at 858 (articulating that an RFC for unskilled work "by itself does not provide any information about [the claimant's] mental condition or abilities").

Here, the ALJ concluded that Holland had moderate limitations in concentration, persistence, or pace when considering the paragraph B criteria. (AR 26). Specifically, the ALJ stated:

> With regard to concentration, persistence, or pace, the claimant has moderate difficulties. The evidence in the record, including the testimony of the claimant at the hearing, shows that the claimant has some difficulty in sustaining focus, attention and concentration sufficiently long enough to permit the timely and appropriate completion of tasks commonly found in work settings.

(AR 26). The ALJ, however, did not include this limitation in the RFC and the hypotheticals to the VE. (AR 27-28, 83-87). Instead, the ALJ assigned an RFC limiting Holland, in relevant part, to:

> [S]imple, routine, repetitive tasks, in other words the claimant can remember simple work like procedures, can maintain sufficient concentration to attend to simple tasks with normal work breaks; is limited to a low stress job with occasional decision making, occasional changes in the work setting and can tolerate predictable changes in the work environment.

(AR 27-28). The ALJ then posed a hypothetical to the VE that was consistent with the RFC. (AR 83-87).

Holland has several mental impairments which the ALJ found to be "severe" at step two: panic attacks, major depressive disorder, agoraphobia, explosive disorder, personality disorder,

15

and borderline intellectual functioning. (AR 25). The ALJ did not discuss whether Holland's problems with concentration, persistence, or pace stem from one of these disorders, or rather, all of these disorders in combination. Consequently, this case does not fall neatly within the exception noted in *Johansen*, where the claimant's concentration problems stemmed from a panic disorder and a hypothetical for "low-stress, repetitive" work was found adequate. 314 F.3d at 289. Instead, the Court must follow the *O'Connor-Spinner* precedent, where the claimant's concentration problems were depression-related and a hypothetical for "repetitive tasks with simple instructions" was found inadequate. 627 F.3d at 620.

Additionally, there is a physical condition at issue in this case. Holland testified that his anger problems are triggered by his chronic pain. Thus, Holland's chronic pain may also contribute to his problems with attention and concentration. The ALJ, however, did not mention his chronic pain in the hypotheticals posed to the VE. *Compare Simila v. Astrue*, 573 F.3d 503, 521-22 (7th Cir. 2009) (finding that the claimant's moderate deficits in concentration, persistence, or pace, which stemmed from his chronic pain syndrome and somatoform disorder, were adequately accounted for in a hypothetical for unskilled work where the ALJ included the claimant's chronic pain and somatoform in the hypothetical), *with Gomez v. Colvin*, 73 F. Supp. 3d 921, 932 (N.D. Ill. 2014) (finding that the ALJ's limitation to unskilled, low-stress work did not account for the claimant's concentration problems, which stemmed from pain, rather than stress), *and Copeland v. Astrue*, 776 F. Supp. 2d 828, 845 (N.D. Ind. 2011) (remanding case where the ALJ did not orient the vocational expert to the claimant's moderate deficiencies in concentration, persistence, or pace resulting from her mental health function and chronic pain).

The Commissioner acknowledges that the ALJ did not expressly include Holland's

moderate difficulties in concentration, persistence, or pace in the RFC or in the hypotheticals posed to the VE, but contends that the ALJ did not need to include these limitations in the RFC because an ALJ's finding of limitations when considering the paragraph B criteria is not an RFC assessment. Rather, an RFC determination requires "a more detailed assessment." (DE 25 at 5). While the Court agrees that the ALJ's findings at step two and three when considering the paragraph B criteria are not, themselves, an RFC assessment, the ALJ's opinion must nevertheless be consistent within itself and build a logical bridge for the ALJ's reasoning. *See Clifford*, 227 F.3d at 872 (The ALJ "must build an accurate and logical bridge from the evidence to his conclusion." (citations omitted)); *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996) (stating that the ALJ's decision must demonstrate the path of her reasoning, and the evidence must lead logically to her conclusion).

Moreover, here, the ALJ assigned significant weight to the opinion of Dr. Clark, the state agency psychologist.[6] (AR 33). Dr. Clark opined not only in Section I but also in the narrative portion of the mental RFC assessment that Holland's ability to maintain attention and concentration for extended periods was moderately limited. (AR 33, 602, 604). Yet, the ALJ did not include this limitation in the RFC or in the hypotheticals posed to the VE. Instead the ALJ limited Holland to simple, routine, and repetitive tasks, stating that he could "maintain sufficient concentration to attend to simple tasks with normal work breaks." (AR 27).

---

[6] When assigning significant weight to Dr. Clark's opinion, the ALJ stated: "The undersigned gives this opinion significant weight, as it is consistent with and supported by the medical evidence of record and the findings of the consultative examiner." (AR 33). The Court is hard-pressed, however, to see how Dr. Clark's opinion is consistent with the findings of Dr. Martin's May 2012 examination in which Holland was rambling and disorganized, had poor recall, demonstrated an unstable emotional demeanor, and voiced vague threats to the examiner. (AR 32, 582-86).

In defending this RFC, the Commissioner argues that the ALJ properly relied on the opinion of Dr. Clark when assigning the RFC, because Dr. Clark "translated [her] step 2 and 3 opinions [of moderate deficits in concentration, persistence, or pace] into functional capacity assessments." (DE 25 at 5). In doing so, the Commissioner urges that this case is analogous to *Johansen*, in which the administrative law judge relied upon the opinion of a consulting physician who "translated [his] findings into a specific RFC assessment" and the ALJ then relied on that translation. 314 F.3d at 289.

The problem here, however, is that Dr. Clark never actually translated her finding of moderate deficits in attention and concentration into a functional assessment. That is, Dr. Clark never opined that Holland had the attention and concentration necessary to attend to simple tasks with normal work breaks. Rather, Dr. Clark stated in her narrative assessment that Holland's attention and concentration were "moderately impacted" and that he was able to "understand, carry out and remember simple instructions; able to make judgments commensurate with functions of unskilled work; able to respond appropriately to brief supervision and interactions with coworkers and work situations; [and] able to deal with changes in a routine work setting." (AR 605). Dr. Clark's functional assessment, however, is silent as to Holland's ability to "stick with a task over a sustained period." *Warren*, 565 F. App'x at 544 (citations omitted).

Consequently, the Court is not convinced that the ALJ relied on Dr. Clark's "translation" of Holland's moderate deficits in concentration and attention when assigning the RFC. Rather, it appears that the ALJ merely assumed that a limitation to simple, repetitive work automatically accounted for Holland's moderate deficits in concentration and attention. *See Dehart v. Colvin*, No. 4:12-cv-137-WGH-TWP, 2013 WL 6440504, at *3 (S.D. Ind. Dec. 9, 2013) (emphasizing

that an ALJ may not merely assume that a limitation to simple, repetitive work will "automatically account" for moderate limitations in concentration, persistence, or pace (citing *Stewart*, 561 F.3d at 684-85)). The Seventh Circuit has "repeatedly rejected the notion that a hypothetical . . . 'confining the claimant to simple, routine tasks . . . adequately captures . . . limitations in concentration, persistence, and pace.'" *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015); *see also Yurt*, 758 F.3d at 858-59 ("[W]e have repeatedly rejected the notion that a hypothetical . . . confining the claimant to simple routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace.") (collecting cases); *Stanifer v. Colvin*, No. 4:13-CV-053-JD, 2015 WL 437773, at *11 (N.D. Ind. Feb. 3, 2015) ("[T]he ALJ committed error by not explaining what evidence supported [his] belief that the plaintiff was able to complete tasks, even if repetitive and simple, over a *sustained* period of time at a *competitive* pace.").

Accordingly, the Commissioner's final decision will be remanded for the purpose of reassessing Holland's mental RFC with respect to his moderate limitations in maintaining concentration, persistence, or pace.

## V. CONCLUSION

For the foregoing reasons, the decision of the Commissioner is REVERSED, and the case is REMANDED to the Commissioner in accordance with this Opinion and Order. The Clerk is directed to enter a judgment in favor of Holland and against the Commissioner.

SO ORDERED.

Entered this 19th day of July 2016.

/s/ Susan Collins  
Susan Collins,  
United States Magistrate Judge